Alexander Berman, J.
In this CPLR article 78 proceeding, petitioners seek to declare void an order dated June 7, 1974, issued by the Superintendent of the Department of Planning and Development of the Town of Oyster Bay. Respondents have moved for dismissal. The text of the edict in dispute is as follows:
*992 "use of plastic piping in the town of oyster bay.
TO ALL PLUMBERS:
We wish to inform you that as of June 20, 1974, plastic piping will not be allowed under any circumstances in the Town of Oyster Bay. This regulation will be strictly enforced by the Plumbing Section in the Division of Building of the Department of Planning and Development. [Emphasis added.]
(Signed) Louis W. Hanold, Superintendent
(Signed) Charles Faughnan, Chief Plumbing Inspector.”
Petitioners consist of a membership association of plumbing contractors and four individual contractors. Their petition was originally dismissed on motion at Special Term on the ground that they lacked standing to maintain the proceeding. On appeal, however, the Appellate Division reversed that threshold determination, and remanded the proceeding back to Special Term, with leave to petitioners to move to add the Town Board of the Town of Oyster Bay as a party respondent (48 AD2d 892). The latter joinder was duly accomplished and accordingly, the Town of Oyster Bay is now a party respondent together with the initial respondent, the Superintendent of the Division of Building of the Town of Oyster Bay.
The nexus of the controversy before this court is the authority of the Town of Oyster Bay through its Superintendent of the Division of Building to ban the use of plastic piping in certain buildings. Petitioners contend, inter alia, that neither the superintendent nor the Town of Oyster Bay , has such power for, in effect, such an order is contrary to the provisions of the New York State Building Code, enacted pursuant to the Executive Law of the State of New York, and furthermore, that such a directive is arbitrary and capricious.
Article 18 of the Executive Law of the State of New York created and established the State Building Code Council in its Executive Department. Its purpose, as set forth in section 370 of the Executive Law, was to "institute the preparation of a state code of building construction to provide, so far as may be practicable, basic and uniform performance standards. Thus, while establishing reasonable safeguards for the security, welfare and safety of the occupants and users of buildings, the use of modern methods, devices, materials and techniques will be encouraged. This should be effective in lowering construction costs.”
*993 Pursuant to this article, each municipality in the State is given the option of accepting the applicability of such code and upon acceptance, the code becomes effective as to it (Executive Law, § 374-a). It also set up a procedure by which any such municipality may withdraw from the application of such code. The Town of Oyster Bay, along with 400 other municipalities, accepted the applicability of such code. These municipalities included the three towns and both cities of Nassau County as well as most of the villages in Nassau County and municipalities throughout the State.
The concomitant rules adopted by the State Building Council pursuant to the article, specifically permit the use of plastic pipe in one and two family dwellings and multiple dwellings not exceeding six stories in height. (State Building Construction Code, 9 NYCRR 1013.4, 1013.7.)
The language of section 386 of the Executive Law is significant. The text of subdivision 1 of that section reads as follows:
"§ 386. Local building regulations.
"1. Nothing in this article shall be construed as prohibiting any municipality from adopting or enacting any building regulations relating to any building within its limits, but no municipality in which the state building construction code has been accepted and is applicable shall have the power to supersede, void, or repeal or make more restrictive any of the provisions of this article or of the rules and regulations adopted by the council hereunder. ” (Emphasis supplied.)
In the case of Idelevitz v City of Glen Cove (230 NYS2d 591, 596) the court held that the New York State Building Code was paramount to any local. ordinance which might be in conflict with or repugnant to the State Building Code, stating:
"One other matter which the parties have not called to the Court’s attention is the circumstances that the City of Glen Cove has apparently adopted the provisions of the State Building Code (see note under § 374-a of McKinney’s Executive Law). In cases where a municipality does affirmatively accept the State Code, it is prohibited from superseding its provisions or enacting more restrictive requirements (Executive Law, § 386), unless the consent of the State Building Code Council is obtained (Executive Law, § 379).” (Emphasis supplied.)
In a later case interpreting this section (Executive Law, § 386), Mr. Justice Frank A. Gulotta, now Presiding Justice *994 of the Appellate Division, Second Department, similarly held: "Furthermore, subdivision 1 of section 386 of the Executive Law states: 'Nothing in this article shall be construed as prohibiting any municipality from adopting or enacting any building regulations relating to any building within its limits, but no municipality in which the state building construction code has been accepted and is applicable shall have the power to supersede, void, or repeal or make more restrictive any of the provisions of this article or of the rules and regulations adopted by the council hereunder. ’ ” (Albini v Stanco, 61 Misc 2d 813, 818, affd 32 AD2d 1042, emphasis supplied.) Additionally, the Attorney-General of the State of New York in a 1959 opinion interpreting sections 374-a and 386 (subd 1) of the Executive Law, stated that where a municipality had adopted the State Building Code which did not require fireproofing in certain structures, the municipality’s requirement of fireproofing could not be permitted to stand. (1959 Atty Gen [Inf Opns] 252.)
It is thus clear that once a municipality becomes a party to the State code it may not unilaterally impose more restrictive conditions than set forth in the State code, or withdraw from it piecemeal.
"Under the section itself there is no method provided to withdraw from it piecemeal. ” (Albini v Stanco, supra, p 818, emphasis supplied.)
The municipality is not, however, left without recourse if it believes that the code requirements are not suitable or sufficiently restrictive to meet the needs of its inhabitants. It has, as heretofore noted, not only the right to withdraw from the compact, but it also has the opportunity to seek an amendment to the code as set forth in section 379 of the Executive Law which provides as follows:
"§ 379. Incorporation of higher standards by council upon recommendation of municipality.
"The local legislative body of any municipality by resolution duly enacted or adopted, may recommend to the council the adoption of rules and regulations imposing higher or more restrictive standards for construction in such municipality than provided generally for such municipality in the state building construction code.
"If the council finds that such higher or more restrictive standards are reasonably necessary because of special conditions prevailing within the municipality and that such stan *995 dards conform with accepted engineering and fire prevention practices and the purposes of this article, the council may adopt such rules or regulations, in whole or part. The council shall have the power to limit the term or duration of such rules or regulations, impose conditions in connection with the adoption thereof, and to terminate such rules and regulations at such times, and. in such manner as the council may deem necessary, desirable or proper.”
Respondents, however, argue that they have the right, nevertheless, to impose more restrictive requirements where such circumstances warrant and they take refuge particularly in 9 NYCRR 1010.2 entitled, "Performance requirements” which reads as follows:
"Before proceeding with an installation, the installer shall consult with the local authority having jurisdiction to determine the durability of materials and joints used under local conditions. Determination by the local authority shall take precedence over the uses of standard materials and joints permitted in this chapter. ” (Emphasis supplied.) Relying upon -this rule, respondents argue that there can be no question but that the superintendent of buildings, or respondent, Town of Oyster Bay, has the right to establish local plumbing material standards upon an "as needed” basis.
The key to the issue here lies in the meaning of the phrase "upder local conditions.” Does this mean, as respondents would have us believe, local conditions imposed by the municipality and building inspector, or does it mean, as the court believes, local physical or environmental conditions' which might affect durability of material? The latter is the only logical meaning, for otherwise, each community would be imposing its. own local conditions at the will of its building department chief, and thus the effective value and purpose of the State code would vanish. The court’s interpretation, on the other hand, would permit local authorities to determine, in specific situations, the choice of materials as it relates to durability, and as same might be affected by a particular or unique local, physical or environmental condition, and after consultation with the installer, to make a determination as to which material should be utilized in that particular situation.
The latter interpretation is in harmony with section 386 of the Executive Law and is a common sense construction, that a rule promulgated pursuant to a statutory provision may not be given a meaning in contradiction of the statute which *996 created the rule. The interpretation of this rule by respondents would have the tail wagging the dog and would emasculate the statute.
The court also notes that in the instant case, the building inspector’s directive of June 7, 1974 assumes to exercise power to eliminate the consultation provision of the very rule upon which it relies (9 NYCRR 1010.2). Under his directive, the installer is deprived of any right to consult with him for the purpose of arriving at a determination as to the use of plastic piping. The ban is absolute.
The State of New York has by reason of article 18 of the Executive Law and the rules promulgated pursuant thereto pre-empted the evaluation of fire resistant qualities, general practicality and durability of materials, and other factors. These standards were arrived at after laboratory testing, scientific examinations and public hearings. The materials which have thus met the State standards may not again be the subject of evaluation by local authorities. As heretofore stated, if the town does not agree, it has the option to withdraw from the compact or apply to the State Building Council for a variance.
In any event, the basis upon which respondent, superintendent, acted in making his unilateral determination to ban plastic piping was empirical and without the benefit of any scientific testing. According to the affidavits submitted by respondents, his actions were prompted by his own conclusion that plastic piping was hazardous and, inter alia, as a result of a letter “from one Morton Altman, proprietor of a local plumbing and heating firm, who likewise stated that in his opinion plastic piping was hazardous and not durable, and conclusory statements from the Deputy Superintendent of Buildings and the Chief Plumbing Inspector. His position is further bolstered by an affidavit of one Lloyd G. Ryan, Fire Marshal of the County of Nassau who made no test of his own, but volunteered that in his opinion plastic piping was hazardous and stated also that the Association of Fire Marshals was opposed to the use of plastic pipe. None of these people have made any scientific tests, nor do they appear to have the qualifications to conduct them or even evaluate such testing if they had been made.
It is also significant that Morton Altman, in his letter of November 19, 1973, in referring to plastic piping, among other things, states, "The pipe is cheaper, easier to instal and would *997 eventually eliminate the use of licensed plumbers.” Respondents conducted no public hearing or engaged any qualified experts to make any tests as to the durability and validity of plastic pipes and joints, as was done in the formulation of the State Building Construction Code. Nevertheless, they have set themselves up as authorities in this area. They attempt to wipe out with a stroke of a pen the use of plastic piping and joints in one of the largest towns in the State of New York and they have thus succeeded in eliminating from competition in the plumbing area all manufacturers and installers thereof as well. Thus, they have wrought a material change in the purpose of the State Building Construction Code, by-passing the procedures set forth in the Executive Law (§§ 374, 377), which provide both a method for the municipality to withdraw from the application of the code and to amend or repeal rules and regulations.
It is the determination of this court that neither the Superintendent of Buildings nor any official of the Town of Oyster Bay, nor the town board itself had the power or authority to promulgate the order banning plastic piping in the Town of Oyster Bay. Such action by the respondents the court finds to be illegal, arbitrary and capricious.
Accordingly, judgment is granted in favor of petitioners, declaring the aforesaid order of June 7, 1974, issued by the Superintendent of the Department of Planning and Development of the Town of Oyster Bay to be illegal and unenforceable. The motion by respondents to dismiss is denied.